JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DEBBIE BARON

## DEFENDANTS

PPL ELECTRIC UTILITIES CORPORATION and CIGNA GROUP INSURANCE and SEDGWICK CLAIMS MANAGEMENT SERVICES,

**(b)** County of Residence of First Listed Plaintiff   NORTHAMPTON
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   NORTHAMPTON
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
SAMUEL A. DION, ESQ.
1845 WALNUT STREET, SUITE 1199
PHILADELPHIA, PA 19103

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☒ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ERISA
Brief description of cause:
FAILURE TO PAY BENEFITS

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   03/12/2019

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #   _____   AMOUNT   _____   APPLYING IFP   _____   JUDGE   _____   MAG. JUDGE   _____

MAR 18 2019

### DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 1003 Pawnee Street, Bethlehem, PA 18015 _____

Address of Defendant: _____ 827 Hausman Road, Allentown, PA 18104 _____

Place of Accident, Incident or Transaction: _____ 827 Hausman Road, Allentown, PA 18104 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 03/12/2019 _____ 55761

               *Attorney-at-Law / Pro Se Plaintiff*         *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.**    *Federal Question Cases:*          **B.**    *Diversity Jurisdiction Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts    ☐ 1. Insurance Contract and Other Contracts
☐ 2. FELA    ☐ 2. Airplane Personal Injury
☐ 3. Jones Act-Personal Injury    ☐ 3. Assault, Defamation
☐ 4. Antitrust    ☐ 4. Marine Personal Injury
☐ 5. Patent    ☐ 5. Motor Vehicle Personal Injury
☐ 6. Labor-Management Relations    ☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Civil Rights    ☐ 7. Products Liability
☐ 8. Habeas Corpus    ☐ 8. Products Liability – Asbestos
☐ 9. Securities Act(s) Cases    ☐ 9. All other Diversity Cases
☐ 10. Social Security Review Cases        *(Please specify):* _____
☒ 11. All other Federal Question Cases    ERISA
     *(Please specify):* _____

---

### ARBITRATION CERTIFICATION

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Samuel Dion, Esq. _____, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 03/12/2019 _____ 55761

               *Attorney-at-Law / Pro Se Plaintiff*         *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

MAR 18 2019



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

DEBBIE BARON

CIVIL ACTION

v.

PPL ELECTRIC UTILITIES CORPORATION
and CIGNA GROUP INSURANCE and
SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC.

NO. 19 - 1140

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                               ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (✓)

| 03/12/2019 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-546-6033 | 215-546-6269 | Samueldion@aol.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MAR 18 2019

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEBBIE BARON | : | |
| | : | |
| v. | : | |
| | : | NO. 19-1140 |
| | : | |
| PPL ELECTRIC UTILITIES | : | |
| CORPORATION and CIGNA | : | |
| GROUP INSURANCE and | : | |
| SEDGWICK CLAIMS MANAGEMENT | : | |
| SERVICES, INC. | : | |

## CIVIL ACTION COMPLAINT

1.  Plaintiff, Debbie Baron, is an adult individual who resides at 1003 Pawnee Street, Bethlehem, PA 18015.

2.  Defendant, PPL Electric Utilities Corporation, (hereinafter "PPL") is a corporation which has a place of business in this District at 827 Hausman Rd, Allentown, PA 18104.

3.  Defendant, CIGNA Group Insurance (hereinafter "CIGNA"), is a corporation which has a place of business in this District at 1 Liberty Place, 1650 Market Street, Philadelphia PA 19192-1550.

4.  Defendant, Sedgwick Claims Management Services, Inc. (hereinafter "Sedgwick"), is a corporation which has a place of business in this District at 1801 Market Street. Suite #5, Philadelphia, PA 19103.

JURISDICTION

5.   Jurisdiction in this matter is appropriately placed in the United States District Court for the Eastern District of Pennsylvania as this claim involves a federal question pursuant to Employee Retirement Income Security Act of 1974 (hereinafter "ERISA").

FACTS

6.   Plaintiff was first employed by defendant PPL as a Customer Service Representative starting on or about December 21, 1999, and, as an employee, she was entitled to all of the rights associated with her employment including eligibility for defendant PPL's Short Term Disability (hereinafter "STD") and Long Term Disability (hereinafter "LTD") plans.

7.   Said STD plan was administered by defendant Sedgwick.

8.   Said LTD plan was administered by defendant CIGNA.

9.   Since December 29, 2015, plaintiff has been disabled from working as a Customer Service Representative for defendant PPL due to a mental breakdown she suffered on or about December 28, 2015 at the workplace which resulted in a worsening of her depression and anxiety.

10.   Plaintiff's treating mental health providers believe that she will remain disabled for the remainder of her natural

life for the same reasons she has been disabled from working for defendant PPL to date.

## FACTS CONCERNING STD CLAIM

11.  At all times relevant hereto, defendant PPL's STD and LTD plans were both set forth in writing and were enforceable as part of the contract of employment between the parties hereto.

12.  Pursuant to the said STD plan, plaintiff was entitled to collect STD benefits on a weekly basis equal to 60% of her gross weekly wages, because her physician provided proof that she was unable to perform her job with defendant PPL for a period of 26 weeks ("the STD period") following her breakdown on or about December 28, 2015.

13.  So long as plaintiff was disabled pursuant to the definition of "disabled" in the said STD plan, she was eligible to apply for and to collect STD benefits during the STD period.

14.  Plaintiff received STD benefits for about 16 weeks through about April 22, 2016, and was denied continuing STD benefits through about June 28, 2016 by defendant Sedgwick despite plaintiff's meritorious claim and submission of supporting documentation by her treating doctors which were received by the defendant Sedgwick.

15.  Needless to say, during the final 10 weeks of the applicable STD period ending on or about June 28, 2016,

defendant Sedgwick failed to make any STD benefit payments to the plaintiff.

16.   Plaintiff contends that she continued to be entitled to STD benefits for the complete STD time period of 26 weeks but that these STD benefits were wrongfully denied by defendant Sedgwick.

17.   Plaintiff exhausted her administrative remedies available pursuant to defendant PPL's STD plan.

## FACTS CONCERNING LTD CLAIM—INITIAL 24 MONTH PERIOD

18.   Pursuant to the said LTD plan, plaintiff was entitled to collect LTD benefits on a monthly basis because her physician provided proof that she was "unable to perform all the material duties of . . . her [job with defendant PPL]. . ." for a period of 24 months following the said STD period ending on or about June 28, 2018 ("the initial LTD period").

19.   So long as plaintiff was disabled pursuant to the definition of "disabled" in the said LTD plan for the initial LTD period, she was eligible to apply for and to collect LTD benefits during this time period.

20.   Plaintiff did not receive any LTD benefits for the first 24 month LTD period, and was denied such benefits by defendant CIGNA despite plaintiff's meritorious claim and submission of supporting documentation by her treating doctors

which were received by the defendant CIGNA.

21.  Needless to say, during the initial LTD period, defendant CIGNA failed to make any LTD benefit payments to the plaintiff.

22.   Plaintiff contends that she was entitled to LTD benefits for the complete initial LTD time period of 24 months (from about June 28, 2016 through about June 28, 2018) but that these LTD benefits were wrongfully denied by defendant CIGNA.

23.  Plaintiff exhausted her administrative remedies available pursuant to defendant PPL's LTD plan.

## FACTS CONCERNING LTD CLAIM—TOTAL DISABILITY PERIOD

24.  After the initial LTD period, plaintiff was and is still entitled to collect LTD benefits on a monthly basis because her physician provided proof that she was "unable to perform all the material duties of and occupation for which [she may reasonably] become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of [her] Indexed Covered Earnings . . ." through the date of filing of this complaint and for the remainder of her lifetime ("the total disability period").

25.  So long as plaintiff remains totally disabled as defined by the said LTD plan, she will continue to be entitled to collect LTD benefits.

26.   Plaintiff has not received any LTD benefits for the total disability period which commenced on or about June 28, 2018, and has been denied such benefits by defendant CIGNA despite plaintiff's meritorious claim and submission of supporting documentation by her treating doctors which were received by the defendant CIGNA.

27.   Needless to say, during the total disability period commencing on or about June 28, 2018, defendant CIGNA has failed to make any LTD benefit payments to the plaintiff to date.

28.   Plaintiff contends that she was entitled to total disability benefits since the end of the initial LTD period which ended on or about June 28, 2018 and that she continues to be entitled to such benefits to date, and will continue to be entitled to such benefits for the remainder of her lifetime, and these LTD benefits were wrongfully denied by defendant CIGNA.

29.   Plaintiff exhausted her administrative remedies available pursuant to defendant PPL's LTD plan.

## DEFENDANT SEDGWICK IMPROPERLY DENIED STD BENEFITS

30.   At all times material hereto, Defendant Sedgwick was in receipt of all medical records through at least August 2, 2016 when it made its decision to deny STD benefits after April 22, 2016.

31.   Defendant Sedgwick's decision was based upon a record

review performed by its peer reviewer, Tanir Tellioglu, M.D.

32.  Dr. Tellioglu was aware that plaintiff was continuing to undergo psychotherapy at St. Lukes Psychiatric Associates though at least August 2, 2016, and that on July 12, 2016 (which was after the STD period), Dr. Walton-Phillips noted a continued diagnosis of major depressive disorder, recurrent severe without psychotic features, and that objective testing that day in the form of a PHQ-9 Adult Depression Test showed a score of 16 which confirmed "moderately severe depression".

33.  At the level of depression she was suffering, plaintiff was recommended to be treated with prescription medication and psychotherapy and was actively doing each.

34.  Dr. Telliogu and defendant Sedgwick were aware that moderately severe major depression is classified as having the symptoms of mild to moderate depression, but the symptoms are severe and noticeable and that such episodes of major depression last an average of six months or longer or remain recurrent in some people.

35. On or about May 18, 2016, plaintiff's treating psychiatrists at St. Lukes Psychiatric Associates submitted a Behavior Health Treating Provider Statement to defendant Sedgwick which indicated that plaintiff was unable to write a sentence from dictation, which is a necessary duty of her customer service job.

36.   The May 18, 2016 Behavior Health Treating Provider Statement also indicated her inability to math well, which is also important for her customer service representative job.

37.   On June 20, 2016, plaintiff's treating psychiatrist, Dr. Elizabeth Walton-Phillips of St. Lukes Psychiatric Associates, filled out a form which was believed and thus averred to have been submitted to defendant Sedgwick.

38.   Said June 20, 2016 form set forth the reasons why plaintiff was disabled from her job as a Customer Service Representative, which included: being unable to perform a variety of duties; unable to work in stressful or emergency situations; being unable to follow specific instructions; and being unable to attain precise limits or tolerances.

39.   Said June 20, 2016 form further noted that plaintiff's concentration and ability to pay attention were impaired due to her psychiatric condition, which are skills necessary to perform her job as a customer service representative for defendant PPL.

40.   Defendant Sedgwick and its agents ignored indisputable evidence of plaintiff's disability including but not limited to the findings, diagnoses, recommendations and test results of plaintiff's treating mental healthcare providers.

41.   Defendant Sedgwick acted arbitrarily and capriciously in denying plaintiff's STD benefits through the end of the STD period and abused its discretion by unreasonably denying

benefits that were due and payable despite plaintiff's good
faith efforts to appeal said denial.

### DEFENDANT CIGNA IMPROPERLY DENIED LTD BENEFITS
### FOR FIRST 24 MONTHS

42.   Defendant CIGNA received the information in the June
20, 2016 form submitted by Dr. Walton-Phillips and it was part
of plaintiff's administrative files for her LTD claim.

43.   Said June 20, 2016 form set forth the reasons why
plaintiff continued to be disabled from her job as a Customer
Service Representative, which included: being unable to perform
a variety of duties; unable to work in stressful or emergency
situations; being unable to follow specific instructions; and
being unable to attain precise limits or tolerances.

44.   Said June 20, 2016 form further noted that plaintiff's
concentration and ability to pay attention were impaired due to
her psychiatric condition, which are skills necessary to perform
her job as a customer service representative for defendant PPL.

45. On August 23, 2016, defendant CIGNA's expert, Peter
Volpe, M.D. issued a written report which set forth in part that
"available medical record does not reflect a severity level that
is consistent with the presence of a psychiatric functional
impairment" and "no indication as to whether . . . psychotherapy
sessions with Dr. Walton-Phillips are occurring", and Dr. Volpe

based these opinions on records through March 17, 2016 and his misplaced belief that there was no indication of continuing treatment between March 17, 2016 and August 23, 2016.

46.   It is believed and thus averred that defendant CIGNA denied LTD benefits to plaintiff based in large part upon Dr. Volpe's faulty reasoning in his August 23, 2016 report.

47.   In reality, plaintiff's medical records, which were provided to defendant CIGNA reflected that she did in fact suffer from a continuing psychiatric functional impairment and underwent the following psychotherapy and treatment between March 17, 2016 and August 23, 2016:

a) On March 29, 2016, plaintiff was examined by Dr. Elizabeth Walton-Phillips of St. Lukes Psychiatric Associates, who confirmed the continuing diagnosis of anxious depression and major depressive disorder, recurrent severe without psychotic features.

b) On April 5, 2016, plaintiff underwent psychotherapy with Dr. Walton-Phillips.

c) On May 18, 2016, plaintiff underwent psychotherapy with Dr. Walton-Phillips.

d) On June 14, 2016, plaintiff underwent psychotherapy with Dr. Walton-Phillips.

e) On July 12, 2016, plaintiff underwent psychotherapy with Dr. Walton-Phillips, and she indicates a continued

diagnosis of major depressive disorder, recurrent severe
without psychotic features and testing that day indicated
plaintiff suffered from "moderately severe depression" at a
PHQ-9 Adult Depression Score of 16.

f) On August 2, 2016, plaintiff underwent psychotherapy
with Dr. Walton-Phillips and indicated a continued
diagnosis of anxious depression and a screening showing
"moderately severe depression" and the narrative stated
that she was having episodes of little interest or pleasure
in doing things, feeling down depressed or hopeless,
trouble sleeping, lacking energy, feeling bad about
herself, and trouble concentrating. And she scored a 14 in
her PHQ-9 Adult Depression Score.

g) On August 9, 2016, plaintiff underwent psychotherapy
with Dr. Walton-Phillips.

48.  Although these records were ultimately provided to
defendant CIGNA and were made part of its administrative record
in the LTD claim, Dr. Volpe never reconsidered his opinion nor
did defendant CIGNA reconsider its reasoning in denying
plaintiff's LTD claim.

49.  On August 16, 2018, plaintiff sent a letter to
defendant CIGNA as part of the second appeal of her LTD claim
denial, which contained a submission from plaintiff's treating
psychiatrist, Tania Martinez-Jimenez, M.D. of St. Lukes

Psychiatric Associates, who set forth on August 7, 2018 that plaintiff's major depressive disorder and generalized anxiety disorder causes her to suffer from depressed mood and affects, limited judgment and cognitive impairment, which impair her ability to perform work duties regardless of the work setting.

50.   On August 16, 2018, plaintiff sent a second letter to defendant CIGNA regarding her second appeal of her LTD claim denial which contained a second submission from Dr. Martinez-Jimenez who sets forth in part that plaintiff's major depressive disorder and ADHD causes her impaired concentration, and confirmed that plaintiff's level of depression has not improved.

51.   In the said second submission, Dr. Martinez-Jimenez corrects the misinterpretations of defendant CIGNA's peer review expert, Patrick Young, M.D. concerning St. Lukes Psychiatric Associates 2016 office notes regarding plaintiff, including:

a) Correcting Dr. Young's misconception that plaintiff's ADHD would affect her memory and that "intact memory" is inconsistent with the diagnosis of ADHD.

b) Correcting Dr. Young's conclusion regarding the St. Lukes Psychiatric Associate February 20, 2017 office notes concerning plaintiff did not support plaintiff's inability to function was erroneous, as the comments in that note that "[plaintiff's] attention and concentration difficulties are persistent and her mood continues to be

depressed" does in fact support her inability to function.

c) Correcting Dr. Young's misinterpretation of the meaning of "stable" in the record, which actually means that plaintiff's level of depression was unchanged.

d) Correcting Dr. Young's misinterpretation of the meaning of "appropriate affect" in the record, which "is used to describe a mood congruent affect (in accordance with described mood which is a subjective measure).

e) Noting that Dr. Young misunderstanding of "stable" and "appropriate affect" were misinterpreted as resolved depressive symptoms by Dr. Young.

52.   On December 31, 2018, plaintiff sent a letter to defendant CIGNA containing a letter authored by Eileen Trapp, RN of St. Lukes Psychiatric Associates, which set forth that Dr. Martinez-Jimenez returned a call from defendant's peer reviewer Dr. Aceveda one day after Dr. Aceveda called to speak to her, and a message was left for Dr. Aceveda to call back, but he never did so.

53.   Defendant's peer reviewers engaged in the same conduct multiple times, in that they call plaintiff's doctors and prematurely and falsely conclude that plaintiff's treating doctors are uncooperative, and then write their reports without input from plaintiff's doctors.

54.   Defendant CIGNA has in its administrative file an

office note dated January 30, 2017, wherein plaintiff's treating physician, Tania C. Martinez-Jiminez, M.D. of St. Lukes Psychiatric Associates, filled out a form setting forth the reasons why plaintiff continued to be disabled from her job as a Customer Service Representative and all other jobs, which included "experiencing severe difficulties with concentration, memory and attention that interfere with ability to perform work duties", and that she could not perform any "temperaments" listed on the form.

55.   Plaintiff provided records to defendant CIGNA from St. Lukes Psychiatric Associates through at least February 2018 and her approval of Social Security Disability Benefits dated March 30, 2018, which supported her continuing claim that she is totally disabled from all jobs and entitled to ongoing LTD benefits.

56.   Defendant CIGNA acted arbitrarily and capriciously in denying plaintiff's LTD benefits through the first 24 month period and abused its discretion by unreasonably denying benefits that were due and payable despite plaintiff's good faith efforts to appeal said denial.

DEFENDANT CIGNA IMPROPERLY DENIED LTD BENEFITS
AFTER THE FIRST 24 MONTHS

57.   Based upon the forgoing, Defendant CIGNA acted

arbitrarily and capriciously in denying plaintiff's LTD benefits after the first 24 month period and abused its discretion by unreasonably denying benefits that were due and payable despite plaintiff's good faith efforts to appeal said denial.

## GENERAL ALLEGATIONS

58.  Defendants' denials of STD and LTD benefits were arbitrary and capricious and were abuses of discretion because defendant received documents which were made part of their respective administrative records which showed that plaintiff was either disabled during the applicable time periods and through the present.

59.  As a result of defendants respective wrongful denials of STD and LTD benefits to plaintiff, plaintiff received no benefits since about April 22, 2016 and will not receive benefits in the future.

60.  As a direct result of defendants respective wrongful refusals to pay STD and LTD benefits to plaintiff, plaintiff has suffered substantial economic and financial damages.

61.  Plaintiff has supplied all necessary medical documentation to support his STD and LTD claims.

62.   There is and was no basis for defendants denials of said STD and LTD benefits to plaintiff.

**COUNT I- ERISA—FAILURE TO PAY STD BENEFITS**

63.    Plaintiff hereby incorporates paragraphs 1 through 62 as though fully set forth herein at length.

64. Plaintiff exhausted her administrative remedies by appealing defendant Sedgwick's denial of STD benefits before filing suit.

65.  This lawsuit was properly filed within the appropriate four year statute of limitations.

66.  As a result of defendants Sedgwick and PPL's failure to pay STD benefits to plaintiff and their violation of ERISA, plaintiff has suffered damages for at least 10 weeks' worth of STD benefits.

**COUNT II- ERISA—FAILURE TO PAY LTD BENEFITS FOR FIRST 24 MONTHS**

67.    Plaintiff hereby incorporates paragraphs 1 through 66 as though fully set forth herein at length.

68. Plaintiff exhausted her administrative remedies by appealing defendant CIGNA's denial of STD benefits before filing suit.

69.  This lawsuit was properly filed within the appropriate four year statute of limitations.

70.  As a result of defendants CIGNA and PPL's failure to pay STD benefits to plaintiff and their violation of ERISA,

plaintiff has suffered damages in the amount of LTD benefits payable since about June 28, 2016 through about June 28, 2018.

## COUNT III- ERISA—FAILURE TO PAY LTD BENEFITS SINCE AFTER THE FIRST 24 MONTHS

71.    Plaintiff hereby incorporates paragraphs 1 through 70 as though fully set forth herein at length.

72. Plaintiff exhausted her administrative remedies by appealing defendant CIGNA's denial of STD benefits before filing suit.

73.   This lawsuit was properly filed within the appropriate four year statute of limitations.

74.   As a result of defendants CIGNA and PPL's failure to pay STD benefits to plaintiff and their violation of ERISA, plaintiff has suffered damages in the amount of LTD benefits payable since about June 28, 2018.


WHEREFORE, plaintiff demands judgment against defendants, and requests the following relief:

a) a declaration pursuant to ERISA that plaintiff is entitled to all remaining unpaid STD benefits during the 26-week coverage period;

b)  a declaration pursuant to ERISA that plaintiff is entitled to LTD benefits for the first 24 months of coverage

pursuant to the defendant's LTD Plan;

c) a declaration pursuant to ERISA that plaintiff is entitled to LTD benefits after the first 24 months of coverage pursuant to the defendant's LTD Plan;

d) damages in a sum to be determined;

e) interest and costs of suit; and

f) reasonable attorneys' fees pursuant to 29 USC Section 1132G(1) of ERISA; and

g) such other relief as this Honorable Court deems proper.

/s/Samuel A. Dion
_____
Samuel A. Dion, Esquire
Attorney I.D. No. 55761
1845 Walnut Street
Suite 1199
Philadelphia, PA 19103
(t) 215-546-6033
(f) 215-546-6269
Email: samueldion@aol.com
Attorneys for Plaintiff